UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-4-D

| RICHARD L. JOHNSON, | |
|---|---|
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| GERALD BAKER, SHERIFF OF WAKE COUNTY, in his official capacity, | |
| Defendant. | |

NOW COMES PLAINTIFF RICHARD L. JOHNSON, though undersigned counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, alleges and complains of the Defendant in this First Amended Complaint as follows:

## INTRODUCTION

1. Plaintiff Richard L. Johnson was unlawfully discharged by Defendant Gerald Baker from his position as Chief of Operations with the Wake County Sheriff's Office on or about 3 December 2018. The discharge of Plaintiff was unlawful because it was done in retaliation for (a) Plaintiff's role in demoting Teddy Patrick, a subordinate deputy sheriff who is a close personal friend and ally of Defendant Baker, in 2017 for Patrick's making inappropriate homophobic and racially discriminatory comments during a training session at the Sheriff's Office, and (b) Johnson's role in assisting the Wake County Sheriff's Office (hereinafter "WCSO") in opposing a complaint that Patrick filed with the EEOC challenging that demotion. Plaintiff Johnson engaged in conduct protected by federal law in his

demotion of Patrick and in assisting the WCSO in responding to an EEOC complaint filed by Patrick over his demotion. Defendant Baker's termination of Plaintiff Johnson in retaliation for Johnson's protected conduct is in violation of federal law, and this action is filed to rectify this violation of law and to recover the damages resulting therefrom.

## PARTIES

2. Plaintiff Richard L. Johnson (hereinafter "Plaintiff" or "Johnson") is a citizen and resident of Wake County, North Carolina.

3. Defendant Gerald Baker (hereinafter "Defendant" or "Baker") is the Sheriff of Wake County, and is a citizen and resident of Wake County, North Carolina. Baker was elected to this office in the November 2018 election, and took office on 3 December 2018.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1343, as this action is authorized under Title VII of the Civil Rights Act.

5. This Court has venue over this action because the unlawful personnel actions and employment practices at issue were committed in Wake County, North Carolina, within the Eastern District of North Carolina ("EDNC"), the relevant employment records are maintained and administered in this judicial district, and Plaintiff did work and would have continued to work in this judicial district but for Defendant's unlawful employment practices.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

6. Plaintiff filed a Charge of Discrimination with the EEOC on 5 February 2019. The EEOC issued a right to sue letter to Plaintiff that was mailed on 10 October 2019 and received by Plaintiff on or about 14 October 2019.

**FACTUAL ALLEGATIONS**

7. Plaintiff began his law enforcement career as a police officer with the Raleigh Police Department in 1967 until 1972. In 1976, Plaintiff became a deputy sheriff with the WCSO. Plaintiff served as a deputy sheriff for approximately 25 years under two (2) different sheriffs until he decided to retire in 2000. During his service, Plaintiff was consistently promoted to supervisory positions, and retired at the rank of Lieutenant, supervising the criminal division of the WCSO. Plaintiff received high performance reviews, and numerous commendations.

8. In April 2003, then-Sheriff Donnie Harrison asked Plaintiff to return to work for him at the WCSO. Plaintiff accepted this offer, and returned to work at the WCSO at the rank of Lieutenant. Plaintiff was promoted to captain in May 2005, then promoted to Major in April 2006, and then promoted to Chief of Operations in January 2007.

9. As Chief of Operations, Plaintiff was the supervisor of the entire operations branch of the WCSO, reporting directly to the Chief of Staff and second-in-command at the WCSO, Larry Wood, and also to Sheriff Harrison. Plaintiff performed his work as Chief of Operations under Sheriff Harrison in an exemplary manner, and received only positive performance reviews. Larry Wood, as Chief of

3

Case 5:20-cv-00004-D   Document 16   Filed 03/24/20   Page 3 of 12

Staff, was second-in-command at the WCSO and was the chief deputy who would take over command of the WCSO in the case of incapacity of the Sheriff.

10. Baker worked as a deputy sheriff with the WCSO in various low-level roles from approximately 1990 until he retired in Spring 2017. At that time, Baker decided to run against Sheriff Harrison in the November 2018 election for the position of Sheriff of Wake County, and Baker did in fact ultimately file for and run against Sheriff Harrison in the November 2018 election.

11. Baker won the November 2018 election for the office of Sheriff of Wake County, and took office on 3 December 2018.

12. Prior to Baker taking office, Baker instructed a close colleague to inform Plaintiff that he would not permit Plaintiff to be re-sworn as a deputy under his command. This decision by Baker had the effect of terminating Plaintiff, because Plaintiff could not continue his employment with the WCSO without being sworn in under the new sheriff. Upon taking office as Sheriff on 3 December 2018, Baker in fact did refuse to permit Plaintiff to be sworn in as a deputy under Baker, thereby terminating Plaintiff. Plaintiff was the only sworn deputy not permitted by Baker to be sworn in among the existing sworn officers at the WCSO, which at that time exceeded 1000 in number.

13. Teddy Patrick is a deputy sheriff with the WCSO who, upon information and belief, began work with the WCSO in approximately 2000.

14. In 2017, Patrick held the rank of Lieutenant at the WCSO. In that role, he held training sessions at the WCSO on various subjects for other deputies.

15. On or about 26 May 2017, Patrick held an in-service training session for deputy sheriffs at the WCSO. This in-service training session was attended by approximately 44 deputies.

16. During that in-service training session, Patrick made several homophobic and discriminatory statements about homosexual persons. Upon information and belief, Patrick, among other statements, told the deputies present that he "didn't believe in being gay," did not like "gay people," and made statements that were derogatory toward homosexuals. Patrick specifically identified one of the deputies present at the training sessions as being "gay", and stated words to the effect of that if a man came to his home dressed as a woman, he would not permit that man to enter his home. The deputy identified by Patrick as being "gay" shall be referred to herein by his initials, D.S.

17. In addition, during this same in-service training session, Patrick (who is African-American) made several comments that were racially inappropriate and discriminatory in nature. Upon information and belief, Patrick stated words to the effect of "if white people keep killing themselves, we black people will be the majority, instead of the minority." Patrick also made statements about his being uneasy boarding airplanes where Muslims males were present.

18. The homophobic and racial comments made by Patrick at the in-service training session made numerous deputies present uncomfortable. The deputies present for Patrick's comments found the comments to be unprofessional and inappropriate for an in-service training session at the WCSO.

19. Two deputies who were present at the 26 May 2017 in-service training session at the WCSO and heard Patrick's inappropriate statements ultimately decided to voluntarily report those statements to the chain of command. These two deputies (A.S. and S.W.) voluntarily reported Patrick's conduct directly to Plaintiff approximately two weeks after 26 May 2017.

20. Upon receiving this report of Patrick's conduct, Plaintiff reported the matter to Sheriff Harrison, and an internal affairs investigation was conducted. During the internal affairs investigation, the majority of the deputies present for Patrick's conduct during the in-service training session were interviewed and required to cooperate with the investigation as a condition of their employment. Upon information and belief, these deputies all confirmed the conduct of Patrick that had been voluntarily reported to Plaintiff by Deputy A.S. and Deputy S.W.

21. When reporting this matter to Sheriff Harrison, Plaintiff advocated his belief to Sheriff Harrison that Patrick had engaged in unlawful discrimination through Patrick's conduct described herein.

22. During the internal affairs investigation, Plaintiff consulted with the in-house legal staff at WCSO regarding Patrick's conduct and its ramifications under Title VII of the Civil Rights Act of 1964. Plaintiff was informed that Patrick's actions were in violation of Title VII, and could result in future liability to the WCSO if action were not taken against Patrick to rectify the situation.

23. After completion of the internal affairs investigation, Plaintiff and Sheriff Harrison met to determine how to deal with Patrick's conduct. Sheriff

6

Case 5:20-cv-00004-D   Document 16   Filed 03/24/20   Page 6 of 12

Harrison, in consultation with Plaintiff and other senior staff, decided that Patrick would be demoted from the position of Lieutenant to the position of Senior Investigator. This demotion resulted in a loss of pay and a complete removal of supervisory authority from Patrick.

24. Plaintiff personally informed Patrick of this demotion in approximately August 2017.

25. Patrick filed a complaint with the EEOC challenging his demotion in the fall of 2017. The WCSO responded to the complaint and explained the basis for Patrick's demotion, including in its response information gathered from Plaintiff. Plaintiff met with the in-house legal staff at WCSO regarding Patrick's EEOC complaint, informed the legal staff of all relevant facts he possessed and his personal beliefs regarding the impropriety of Patrick's conduct, and answered all questions asked of him by the legal staff for inclusion in their response to Patrick's EEOC complaint. The EEOC found no merit in Patrick's complaint regarding his demotion, and dismissed the complaint.

26. While the internal affairs investigation of Patrick was proceeding in summer 2017, Patrick, upon information and belief, was conferring with and advising Baker regarding Baker's plan to run for the office of Sheriff against Sheriff Harrison in the November 2018 election.

27. Baker and Patrick have long been close friends and confidants. When Baker was a deputy sheriff, Baker was directly supervised by Patrick when Baker was working in the judicial services branch of the WCSO. Upon information and

belief, Patrick and Baker frequently ate lunch and socialized together. In addition, upon information and belief, Baker and Patrick are members of the same Masonic Lodge, and socialize together in that context.

28. Baker and Patrick often travel together. In approximately February 2018, Baker, Patrick, and other WCSO deputies went on a trip to the Dominican Republic together. Upon information and belief, Patrick and Baker discussed Baker's campaign against Sheriff Harrison, and Patrick's demotion by Sheriff Harrison and Plaintiff, during this trip. The same group went on a separate trip to the Caribbean during the summer of 2018. Again, upon information and belief, Patrick and Baker discussed Baker's campaign against Sheriff Harrison, and Patrick's demotion by Sheriff Harrison and Plaintiff, during this trip.

29. Upon information and belief, during the travel referenced herein, Baker and Patrick engaged in recreational and other activities that only the closest of friends and confidants would share.

30. After Baker won the November 2018 election against Sheriff Harrison, Baker named a "transition team" of approximately five (5) persons to advise him regarding his transition to the office of Sheriff. Baker named Patrick to the transition team. Upon information and belief, as a member of the transition team, Patrick was involved in discussions with Baker and other members of the transition team regarding personnel decisions to be made when Baker took office in early December 2018.

31. Upon taking office as Sheriff on 3 December 2018, Baker promoted Patrick from the position of Senior Investigator to the position of Captain, and then promoted Patrick again shortly thereafter to the position of Major -- which had the effect of making Patrick the "second in command" at the WCSO.

32. Baker terminated Plaintiff from his position as Chief of Operations with the WCSO in December 2018, in retaliation for Johnson's role in demoting Patrick for his homophobic and racially discriminatory comments during the May 2017 training session, and Johnson's role in assisting the WCSO in responding to Patrick's bogus EEOC complaint

33. Several statements made by persons close to Baker confirm this fact. After the 2018 election, Sheriff Harrison had a conversation with Karen Wallace, another member of Baker's "transition team." Sheriff Harrison inquired of Wallace as to why there was hostility from Baker's camp toward Harrison and Plaintiff. Wallace told Sheriff Harrison "you never should have demoted Teddy Patrick."

34. Likewise, after the 2018 election, upon information and belief Patrick had a conversation with the D.S., the deputy Patrick specifically identified as being "gay" during the May 2017 in-service training session. Patrick told D.S. words to the effect of "You don't have anything to worry about, I know who was responsible."

35. In addition, after the 2018 election, a close personal friend of Karen Wallace told Deputy A.S. that "Chief Richard Johnson had to go."

36. In addition, Deputy A.S. and Deputy S.W., who had initially voluntarily reported Patrick's homophobic and racially inappropriate conduct to Plaintiff, were both terminated by Baker in December 2018.

37. Sheriff Harrison had a senior staff comprised of fourteen (14) deputies and staff. Plaintiff is the only member of the senior staff terminated by Baker. Chief Deputy Larry Wood was retained in employment by Baker.

## FIRST CLAIM FOR RELIEF

Title VII -- Retaliation

38. The allegations of Paragraph 1 through 35 are realleged and incorporated as if fully set out herein.

39. Plaintiff engaged in conduct that is and/or he reasonably believed to be protected conduct under Title VII of the Civil Rights Act, as outlined herein.

40. Plaintiff reasonably believed he was opposing unlawful discrimination when he reported Patrick's conduct to Sheriff Harrison, expressed his personal belief to Sheriff Harrison that Patrick's conduct was illegal, participated in the demotion of Patrick, and assisted the WCSO in responding to Patrick's bogus EEOC complaint.

41. Plaintiff was terminated by Baker in retaliation for Plaintiff's protected conduct as outlined herein.

42. Plaintiff's protected conduct as outlined herein was the but-for cause of his unlawful termination by Baker.

43. As a direct and proximate result of Baker's unlawful termination of Plaintiff, Plaintiff has suffered pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays of the Court as follows:

1. That judgment be entered against Defendants in favor of Plaintiff for compensatory damages for his pecuniary losses in an amount to be proven at trial, including back pay and front pay with interest thereon, lost benefits, other privileges of employment, and other damages as permitted by law;

2. That judgment be entered against Defendants in favor of Plaintiff for compensatory damages for his non-pecuniary losses in an amount to be proven at trial, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, damage to career and reputation, and other non-pecuniary losses as permitted by law;

3. That Plaintiff's costs and expenses be taxed to Defendants as permitted by law;

4. That Plaintiff recover his attorneys fees from Defendants as permitted by law;

5. That Plaintiff have a trial by jury; and

6. For such other and further relief as the Court may deem just and proper.

This the 24th day of March, 2020.

                **GAMMON, HOWARD & ZESZOTARSKI, PLLC**

                /s/ Richard T. Gammon
                Richard T. Gammon
                N.C. State Bar No. 9807
                rgammon@ghz-law.com

                /s/ Joseph E. Zeszotarski, Jr.
                Joseph E. Zeszotarski, Jr.
                State Bar No. 21310
                jzeszotarski@ghz-law.com

                P.O. Box 1127
                Raleigh, NC 27602
                (919) 521-5878
                Fax: (919) 882-1898

                Counsel for Plaintiff