IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:20-cv-00004-D

RICHARD L. JOHNSON,       )
                                  )
       Plaintiff,            )
                                  )
vs.                              )    **MEMORANDUM OF LAW IN SUPPORT**
                                  )    **OF DEFENDANT'S MOTION FOR**
GERALD BAKER, SHERIFF OF WAKE  )    **SUMMARY JUDGMENT**
COUNTY, in his official capacity,     )
                                  )
       Defendant.          )
                                  )

Defendant Gerald Baker, Sheriff of Wake County, in his official capacity ("Baker" or "Defendant"), by and through his undersigned counsel offers this memorandum in support of his Motion for Summary Judgment seeking dismissal of Plaintiff's sole claim: a claim for Title VII retaliation.

This lawsuit is a thinly veiled politically motivated effort to cast a negative light upon current Wake County Sheriff Gerald Baker. In short, Plaintiff argues contrary to common sense and all competent evidence, that after Sheriff Baker won the election and took office, Sheriff Baker's decision not to swear in (hire) Plaintiff Richard L. Johnson ("Plaintiff"), his political rival's Chief of Operations who had been specifically recruited out of retirement by former Sheriff Harrison and ultimately promoted to a position reporting directly to Sheriff Harrison, was not really the logical, natural result of Sheriff Baker seeking to select his own trusted staff. Rather, Plaintiff avers that the "true" reason for his non-selection by Sheriff Baker after the election was related to an investigation and response to an EEOC charge involving another employee of the Sheriff's Office which occurred in June and August of 2017 - 18 months before the election.

The undisputed facts show that Plaintiff, a senior staff member of former Wake County Sheriff Donnie Harrison ("Harrison"), was not re-sworn under Baker's Administration after Baker won the election for Wake County Sheriff in 2018. Plaintiff contends Baker's decision to not re-swear Plaintiff as a deputy was in retaliation for Plaintiff's role in the 2017 demotion of Teddy Patrick, a deputy sheriff and friend of Baker. [DE # 16, ¶ 40] Plaintiff further contends that his role in the demotion of Teddy Patrick was "protected activity" under Title VII.

Despite thirteen depositions, multiple sets of written discovery, and the production of hundreds of documents, Plaintiff has failed to produce a scintilla of evidence to support his speculative theories of retaliation and his claim in this case. Indeed, Plaintiff has not proffered a single witness who can provide any competent evidence that Baker engaged in unlawful retaliation. In contrast, the uncontroverted evidence shows that Baker's reason for not offering Plaintiff the opportunity to be resworn was made by Baker alone, based upon:

- Baker's observations that Plaintiff engaged in conduct which Baker deemed incompatible with Baker's vision for his administration;

- Baker's lack of trust and respect for Plaintiff; and

- Plaintiff's lack of respect for Baker.

Further, Plaintiff's alleged "protected activity" which forms the basis for his claim, is not protected activity as a matter of law.

## NATURE OF THE CASE

Plaintiff filed this action on January 7, 2020, alleging one cause of action: a Title VII retaliation claim. [DE # 1] On March 4, 2020, Defendant filed a Motion to Dismiss for failure to state a claim for which relief can be granted. [DE # 14 and # 15] On March 24, 2020, Plaintiff filed his First Amended Complaint. [DE # 16] On April 21, 2020, Baker filed a Motion to Dismiss

2

the First Amended Complaint for failure to state a claim for relief. [DE # 18] By Text Order dated June 10, 2020 [DE # 22], this Court denied Defendant's Motion to Dismiss, allowing the case to proceed. Discovery is complete and Defendant seeks summary judgment on Plaintiff's sole claim.

<u>**STATEMENT OF FACTS**</u>

**A.      Plaintiff and Baker's Employment with Wake County Sheriff's Office.**

Plaintiff began his employment with the Wake County Sheriff's Office ("WCSO") in 1976 as a deputy sheriff. [DE # 16] Over the years, he was promoted to various supervisory positions. [DE # 16, ¶7] By the time Plaintiff first retired in 2000, he had obtained the rank of Lieutenant. [Johnson 14:17-19]

Baker began employment as a Deputy Sheriff in May 1990 [Baker 6:21-23] Plaintiff and Baker worked together, and at one point, Plaintiff was Baker's direct supervisor. [Baker 15:2-4]. It was no secret that Plaintiff and Baker did not like each other, and that this poor relationship had existed for many, many years. According to Baker, Plaintiff "didn't care anything about [Baker, and Baker] didn't care anything about him." [Baker 63:10-14] This sentiment was echoed by Terry Green who testified "there was not a lot of like nor trust there between the two men….[Baker], in my personal opinion, didn't really care for Plaintiff and Plaintiff didn't care for [Baker]. They just—and—and—that—I don't know where that started or when it started, but for as—as long as I can remember, they never really had that much of a bond between the two. It probably started when they were working CID—" [Green 44:1-11]

As an example of the reasons he did not trust Johnson, Baker recalled an incident when he was working under Johnson's supervision[1] when Johnson instructed Baker to take one course of

---

[1] When Baker was assigned to investigations in the Person Crimes Unit in the late 1990's, he reported to Plaintiff who was a Lieutenant at the time. [Baker 13:7-18]

action, then wrote Baker up for doing what Johnson had instructed him to do. Specifically, Baker testified that while working a homicide case, Plaintiff instructed Baker to hold on to a warrant instead of returning it to the Communications Center where it belonged. [Baker 11:12-14:2] Baker complied with Plaintiff's order. [Id.] Later, Plaintiff wrote Baker up for not returning the warrant to the Communication Center even though Plaintiff himself had instructed Baker to hold on to the warrant. [Id.] This write-up was the only write-up Baker received during his employment with the WCSO. [Id.] Baker disagreed with the write-up. [Baker 15:5-9][2]

By his own admission, Plaintiff was not a supporter of Baker in the 2018 election and was loyal to the former Sheriff, Harrison. [Johnson 16:11-13; 52:15-20; 62:15-20] When Plaintiff was questioned about whether Baker was qualified to be Sheriff, Plaintiff testified he did not know him that well and admitted he would support Harrison again if Harrison ran for Sheriff. [Johnson 61:1-4; 62:16-20]

After Plaintiff retired in 2000, Harrison ran for Wake County Sheriff in 2002 and won the election. [Harrison 38:24-39:6] Following his win, Harrison asked Plaintiff to return to work at the WCSO. [Johnson 16:11-15] In 2003, Plaintiff returned as a Lieutenant and was subsequently promoted to Captain in May 2005, to Major in April 2006, and then Chief of Operations in January 2007 all under Harrison's administration. [DE # 16, at ¶ 8] Harrison maintained a senior staff of 14 deputies, with two "Chief" Deputies – Plaintiff and Larry Wood ("Wood"). Plaintiff served as Chief of Operations, Wood served as Chief of Staff. [Id. at ¶¶ 8-9, 37] As Chief of Operations, Plaintiff reported directly to Harrison and was responsible for the day to day operations of the divisions within his chain of command, such as Criminal Investigative Division, patrol, special

---

[2] Plaintiff testified he did not have any recollection related to these events. [Johnson 58:8-12]

4

ops, sex offenders, the intelligence unit, property crimes, investigations and person crimes. [Id. at ¶9; Johnson 54:18-22; and 193:10-19]

While working with Harrison's administration, Plaintiff did not directly supervise Baker. [Baker 60:22-24] Baker retired in June 2017 at the rank of Sergeant[3]. [Baker 9:9-14] At the time of Baker's retirement, Teddy Patrick was Baker's supervisor. [Baker 55:22-56:5]



---

[3] Baker's retirement date was June 30, 2017. [Baker 9:12-14]



**C.     Baker Wins the Wake County Sheriff's Election.**

In 2018, Baker decided to run for Wake County Sheriff. [Baker 23:23-24:2]  Following a

contentious race, Baker was able to unseat Harrison and won election to Sheriff.  [Baker 61:25-

---

[4] Patrick requested to be demoted to Investigator, rather than Sergeant. [Patrick 11:12-17]

6

62:7; Harrison 116:14-16]  To prepare for transition to office, Baker selected a small group of current and former Sheriff's Office employees as advisors.  [Baker 76:10-18]  This transition team was comprised primarily of:  Patrick, Deidre Jackson ("Jackson"), Jared Ollison ("Ollison"), Karen Wallace ("Wallace"), and Robert Mitchener ("Mitchener").  [Baker 76:19-22; Wallace 36:18-23]  A few other folks such as Terry Green and Charles Haywood also assisted with the transition although their involvement was more minimal.  [Wallace 39:21-25]  Baker met regularly with his transition team, discussing operational changes and needs for the Sheriff's Office.  [Wallace 39:10-25] ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████  Green informed Plaintiff he would not be re-sworn under Baker's Administration. [Green 60:2-6]  Baker did not tell Green the reason for his decision.  [Green 59:5-12]  Further, Baker never told Green the decision had anything to do with Patrick's demotion.  [Green 61:3-6]  As noted above, Green's belief was that the reason Baker did not offer Johnson the opportunity to be resworn was because the two did not like each other.[6]

---

[5] Baker had a "list" of employees he had formed over the years of individuals who he had determined would not work for his administration if he were elected, and he did not consult with the transition team about these decisions.  [Baker 78:25-79:12]

[6] "[T]here was not a lot of like nor trust there between the two men….[Baker], in my personal opinion, didn't really care for [Plaintiff[ and [Plaintiff] didn't care for [Baker].  They just—and—and—that—I don't know where that started or when it started, but for as—as long as I can remember, they never really had that much of a bond between the two.  It probably started when they were working CID—"  [Green 44:1-11]

Baker's rationale for not re-swearing Plaintiff was simple: Plaintiff neither cared for Baker nor had any respect for Baker, and Baker had similar feelings toward Plaintiff. [Baker 63:10-14] In addition, Baker did not believe Plaintiff would be aligned with the vision Baker had for the office based on Baker's own personal observations of Plaintiff's conduct over the course of Baker's 27-year career with WCSO. [Baker 64:16-21] Through his own observations, Baker concluded Plaintiff had a willingness to undermine direct supervision and treat those he supervised with disdain, while simultaneously giving others preferential treatment. [Ex. I - Baker's Response to Plaintiff's Interrogatory Number 1] Baker observed that Plaintiff failed to consistently utilize his power and authority to engage equitably, honestly, or fairly in many cases. [Id.] Baker further observed that Plaintiff was not ethical or honest in all of his dealings with coworkers and subordinates, including Baker. [Id.] Plaintiff retired from the WCSO on or around December 3, 2018[7]. [Baker 66:18-22; Johnson 15:15-25]



---

[7] Harrison and his Executive Assistant also retired effective December 3, 2018.

8

**D. Plaintiff files an EEOC Charge.**

On February 5, 2019, Plaintiff, ████████████████████████ filed their respective

Charges of Discrimination. Plaintiff's Charge alleged as follows:

[Hargrove Aff. ¶ 9, Ex. 7] Following an investigation, the EEOC issued a Dismissal and Notice

of Rights on October 10, 2019, with a no cause finding. [Hargrove Aff. ¶ 9, Ex. 8]. Plaintiff filed

this action on January 7, 2020. [DE # 2]

## ARGUMENT

**I.    The Applicable Standard of Review.**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Holland v.

Wash. Homes, Inc., 487 F.2d 208, 213 (4th Cir. 2007). Although the Court must construe facts in

the light most favorable to Plaintiff, "there must be 'sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted.'" Id. (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-50). In determining whether a genuine issue of material fact exists,

the court must "view the facts and all justifiable inferences arising therefrom in the light most

favorable to . . . the nonmoving party." Id. at 565 n.1 (internal quotation marks omitted). However, "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted). "(A) party cannot withstand summary judgment by relying solely on his own self-serving allegations unsupported by any corroborating evidence." Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (per curiam) (citing Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004)).

## II.     Plaintiff's retaliation claim fails.[8]

To state a Title VII retaliation claim, Plaintiff must show: (1) he engaged in protected activity; (2) Baker took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse employment action. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). For purposes of this Motion, Baker concedes Plaintiff suffered an adverse action – i.e. he was not invited to be re-sworn in Sheriff Baker's administration. However as explained below, Plaintiff cannot proffer any evidence sufficient to meet the remaining two elements of this claim.

---

[8] It is noted that to the extent Plaintiff brings this claim for actions taken while he was working under Harrison, Plaintiff's claims should likely have been brought under the Government Employee Rights Act ("GERA"), 2000e-16a, et seq., rather than Title VII. Plaintiff was chosen by Harrison, a "person elected to public office" to be on Harrison's personal staff as a Chief of Operations, 42 U.S.C. § 2000e(f). Plaintiff's employment with WCSO terminated upon the election of Baker, and he was not subsequently selected to be re-sworn as a deputy to serve under Baker. To the extent Plaintiff complains he was not selected to be re-sworn in any capacity, his claims against Baker may sound in "failure to hire" under Title VII rather than GERA. The legal analysis is the same under either statute for purposes of this motion – Plaintiff cannot and has not stated a claim sufficient to survive summary judgment under either Title VII or GERA. Further, any claim under GERA, is time-barred by the applicable statute of limitations.

10

## A.     __Plaintiff Did Not Engage in Protected Activity as Defined by Applicable Law.__

Protected activity can take the form of either: (1) opposing a practice prohibited under Title VII (pursuant to the opposition clause); or (2) making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). Rachel-Smith v. FTData, Inc., 247 F.Supp.2d 734, 747 (D.Md.2003).

"Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention ***to an employer's discriminatory activities***." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (emphasis added). A plaintiff in a Title VII retaliation case need "only prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003). In reviewing what is considered opposition activity, however, a court must apply a balancing test between Title VII's purpose to protect persons engaging in reasonable opposition activities opposing discrimination, and Congress' intent to not bind the employer in its ability to control personnel. Laughlin, 149 F.3d at 259 (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981)). Thus, the court must review the totality of the alleged protected conduct to determine whether it rises to the level of opposition activity, and "the touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to (his) employer a belief that *the employer has engaged in. . . a form of employment discrimination*, and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." DeMasters v. Carilion Clinic, 796 F.3d 409, 417-418 (4th Cir. 2015) (emphasis added) (internal quotations and citations omitted).

On the other hand, "participation" activities include reports through official channels and participation in formal investigations within "the machinery set up by Title VII." Laughlin v.

Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).; Glover v. South Carolina Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999). Internal investigations do not meet this requirement as "the EEOC process must have commenced in order for an employee to claim protection under the participation clause." Winslow v. Locke, Civ. No. DKC-09-0071, 2010 WL 1141200, at *6-7 (D. Md. Mar. 22, 2010) (collecting cases that "held that the participation clause has no application in the context of an internal investigation where an EEOC complaint has not been filed.").

 Plaintiff's proffer of evidence is insufficient to establish Plaintiff engaged in protected activity under any of these theories.

### 1. **Failure to exhaust.**

As a preliminary matter, Plaintiff has failed to exhaust his administrative remedies as to several of these theories. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) (citation omitted). The contents of the charge determine the scope of the plaintiff's right to file a federal lawsuit. *Id.* (citation omitted). The boundaries of a subsequent lawsuit are restricted to: (1) discrimination claims stated in the initial charge; (2) those reasonably related it; (3) and those developed by reasonable investigation of the charge. Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005); Lawson v. Burlington Indus., Inc., 683 F.2d 862, 863-64 (4th Cir. 1982) (holding that claim of discriminatory failure to rehire was barred

for failure to exhaust because the administrative charge alleged illegal layoff only); Taylor v. Va. Union Univ., 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (holding plaintiff had not exhausted administrative remedies when the factual allegations of after-hours phone calls and touching were too inconclusive to suggest sexual harassment).  Where the charge references "different time frames, actors, and discriminatory conduct than the central factual allegations in (plaintiff's) formal suit," it fails to exhaust the claim. Chacko, 429 F.3d at 506; See also Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001) ("(T)he EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals.").

   "The Fourth Circuit takes a narrow approach to determining if claims are 'reasonably related' to or 'developed by reasonable investigation of' the original complaint." Tran v. Norvo Nordisk Pharm. Indus., NO. 5:14-CV-FL, 2016 U.S. Dist. LEXIS 51623, *34 (E.D.N.C. 2016). The Court is not "at liberty to read into administrative charges allegations they do not contain." Balas v. Huntingon Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013); Manning v. Foodarama, Inc., 195 F.Supp.2d 741 (D. Md. 2002) (dismissing failure to promote claim not raised in EEOC Charge); Riley v. Technical and Management Services Corp., 872 F.Supp. 1454 (D. Md. 1995) (granting summary judgment for employer on sexual harassment claim where there was no mention of sexual harassment in the EEOC Charge).

   In Chacko, the plaintiff alleged three acts of supervisor harassment in his charge but, in litigation, he asserted claims his co-workers engaged in national-origin-based harassment focused on the use of epithets. Chacko, 429 F.3d at 509. In holding plaintiff had not exhausted his administrative remedies, the Fourth Circuit concluded "a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not have been expected to

lead to a continuous pattern of nonsupervisory misconduct which did involve name calling."
Chacko, 429 F.3d at 512.

Here, Plaintiff's EEOC Charge referenced only one potential theory of protected activity: his involvement in ████████████ In his Charge, Plaintiff specifically alleged ████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ [Hargrove Aff. ¶9, Ex. 7] Plaintiff's EEOC Charge is completely devoid of any allegations that he ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

Allowing Plaintiff to proceed on the additional theories would defeat the very purpose of the administrative exhaustion requirement—notice and conciliation—if he could now pursue these new theories of retaliation despite the Charge's absolute silence as to them. Chacko, 429 F.3d at 510.

Further these new theories of protected activity are not reasonably related to his claims in the EEOC Charge or claims that could have been developed by reasonable investigation of the Charge. As Chacko makes clear, factual allegations made in formal litigation must correspond to those set forth in the administrative charge and cannot be manufactured out of whole cloth. Chacko, 429 F.3d. at 509. ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Plaintiff's new theories of protected activity as set forth in his complaint do not appear within the four corners of his EEOC Charge, and his

14

failure to include these new theories in his EEOC Charge prevents him from now seeking recovery for them. Accordingly, Plaintiff cannot pursue a claim premised upon alleged protected activity except as it relates to ███████████████████████████████████████

### 2. __None of Plaintiff's currently proffered alleged activity constitutes protected activity under applicable law.__

Even if Plaintiff had exhausted his administrative remedies as to all of his theories of alleged protected activity, Plaintiff still has failed to proffer admissible evidence that he engaged in legally protected activity under any theory. Each alleged theory will be addressed in turn.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ As a supervisor, Plaintiff was duty bound to bring forward any complaints of alleged discrimination, harassment, or retaliation. [Johnson 109:9-11] Complying with his legal obligations and job duties does not constitute protected activity. Plaintiff was not present for the training session and could not have known whether the conduct occurred or whether it may have violated Title VII. [Johnson 115:5-7] Under the circumstances, Plaintiff's relaying information to his superior, then Sheriff Harrison, does not constitute either participation or opposition activity. As confirmed by Harrison, Plaintiff merely performed his job duties related to the ████████████████████ [Harrison 72:7-10] Plaintiff's self-serving "belief" that such conduct was opposition activity is irrelevant - the evidence fails to show that Plaintiff "opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a).[9]

---

[9] See also, e.g. Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006) (public employees making statements as part of their official duties are not protected by the First Amendment).

15

████████████████████████████████████████████████████████████

Similarly, Plaintiff cannot show he engaged in protected activity by opining that he thought ████████████████████████████████████████████ Again as a supervisor in the WCSO, Plaintiff was duty bound to bring forth concerns about alleged discrimination and harassment. [Johnson 109:9-11] As recognized by courts in this circuit, a decision to discipline a subordinate employee is not a protected activity under Title VII because it does not involve "making charges, testifying, assisting, or participating in enforcement proceedings." Pletz v. Hayden, No. 08-0539, 2009 U.S. Dist. LEXIS 8261,*13 (E.D. Va. Feb. 4, 2009) aff'd sub nom, Pletz v. Panetta, No. 09-1388, 2010 U.S. App. LEXIS 8993 (4th Cir. 2010). If imposition of discipline does not constitute protected activity, then it logically follows that the lesser action of allegedly expressing a belief about whether certain conduct implicates Title VII is similarly not protected – because it does not involve "making charges, testifying, assisting, participating in enforcement actions" either.

██████████████████████████████████████████████████████████████████ does not constitute opposition activity because Plaintiff was furthering his employer's goals of non-discrimination and harassment rather than "opposing an employer's alleged discriminatory action". In other words, Plaintiff did not oppose any discriminatory actions of his employer; rather, he opposed conduct he believed to be a violation of his employer's policies—and consistent with the duties of his position—that might have violated Title VII.

The decision in Constellium Rolled Prods. Ravenswood, LLC v. Rogers, No. 2:15-cv-13438, 2017 U.S. Dist. LEXIS 64779, *20 (S.D. W. Va. April 28, 2017), is instructive. In Constellium, the court analyzed Plaintiff's claim of retaliation based on reports he made through the scope of his employment. The court concluded that when determining whether certain

16

designated employees have engaged in protected activity, the analysis should focus on ***the actions taken beyond their required job duties***. An employee, who as a part of his job duties is required to make reports and conduct investigations, can engage in protected activity, but only if he personally advocated his belief that his *employer* had engaged in discrimination. See id.

 Plaintiff's attempts at legal gymnastics in order to demonstrate protected activity pursuant to this theory are unavailing.

 Plaintiff, however, has not proffered sufficient evidence to support this allegation, and even if he did, such conduct does not constitute protected activity. Harrison testified that it was his decision alone █ ████████ [Harrison 72:24-73:12] Admittedly, Harrison sought input from Plaintiff and other senior staff as part of their job duties, but these discussions did not alter ██████ ████████ [Id.; 72:7-10]

Again, Plaintiff's self-serving "belief" that this conduct constituted opposition activity is irrelevant as the uncontroverted evidence fails to show that Plaintiff "opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Instead, the evidence clearly shows

Plaintiff's actions in discussing the appropriate level of discipline were in "support of" his employer's actions, not in "opposition to" violations of Title VII by his employer. It is "'(w)hen an employee communicates to h[is] employer a belief that the employer has engaged in. . . a form of employment discrimination, that communication virtually always 'constitutes the employee's opposition to the activity.'" Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 273, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009).

As previously noted, a decision to discipline an employee is not a protected activity under Title VII. Pletz v. Hayden, No. 08-0539, 2009 U.S. Dist. LEXIS 8261,*13 (E.D. Va. Feb. 4, 2009). In Pletz, the plaintiff filed a Title VII claim alleging she was retaliated against after she took corrective action against a subordinate employee. Plaintiff alleged the corrective action was protected activity, and she was retaliated against when the was not promoted and her overtime was denied. The court concluded that taking corrective action against a subordinate was not protected activity and determined the retaliation claim failed as a matter of law. Id.

The court's rationale in Pletz is directly applicable here. Plaintiff's alleged protected "opposition" activity is not opposition activity at all. Rather, his actions were the mere performance of his job duties which included implementation of his employer's policies. As the Chief of Operations, Plaintiff was the supervisor of the entire operations branch of the WCSO. [DE # 16, ¶ 9] In this role, Plaintiff was required, as a part of his regular job duties, to appropriately respond to complaints and take appropriate corrective actions. Plaintiff's actions of escalating his subordinates' complaints and then discussing with Harrison in determining the appropriate level of discipline to be imposed was inherent to the duties of his position. Again, Plaintiff's actions were in support of, and not in opposition to, the interests of his employer. As such, these actions are not protected opposition activity under Title VII.

18

Simply put, Plaintiff's after the fact stated belief that he was engaging in opposition activity is insufficient to convert the performance of Plaintiff's normal job duties on behalf of his employer to "protected opposition activity" under Title VII.  [DE # <u>16</u>, ¶ 40]  ███████████

███████████████████████ as a part of his job duties with his employer do not constitute opposing unlawful practices of the WCSO, but rather were the converse of opposition activity – they were advancing WCSO's non-discriminatory policies. Opposition activity requires exactly that – opposition voiced to his employer, i.e. a communication to "… (his) employer a belief that the ***employer has engaged in . . . a form of employment discrimination*** …." <u>DeMasters</u>, 796 F.3d at 417-418.  The uncontroverted evidence proves Plaintiff's actions were well within his normal and assigned job duties, collecting and sharing information with appropriate persons within the WCSO to effectuate the process of enforcing WCSO's non-discriminatory policies and not opposing perceived or actual violations of Title VII by his employer.



See, DeMasters, "the touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to (his) employer a belief that the **_employer has engaged in_** . . . a form of employment discrimination, and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." DeMasters, 796 F.3d at 417-418 (emphasis added).

In sum, even considering all of the current theories of protected activity, Plaintiff has not proffered sufficient evidence to show he engaged in protected activity under any theory as a matter of law. Because Plaintiff cannot prove this element of his prima facie case, Defendant is entitled to Summary Judgment.

**B.**      **Plaintiff Cannot Show a "But-For" Causal Connection Between any Alleged Protected Activity and Any Adverse Employment Action.**

Even if Plaintiff can show he engaged in protected activity, Plaintiff cannot demonstrate any causal connection between his alleged protected activity and Baker's decision not to offer him the opportunity to be resworn after the election. As previously noted, "retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Nassar, 133 S. Ct. at 2528-30 (emphasis added).

First, it is axiomatic that "[a]n employer must be aware of an employee's protected activity before it can retaliate against it." See Baqir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006); Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir. 2001); and  Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).  In essence, if the relevant official was unaware of the protected activity at the time of the alleged retaliation, there can be no causal link between the two events. See Baqir, 434 F.3d at 748.

Here, Plaintiff cannot show a causal link between the alleged protected activity and Baker's decision to not re-swear Plaintiff because Plaintiff has not proffered any admissible evidence to demonstrate Baker was even aware of any of Plaintiff's alleged protected activity at the time Baker made his decision. 

Baker has denied all such knowledge, and none of the thirteen witnesses deposed in this action have offered any testimony to contradict this fact. 

testimony. [Harrison 73:2-5] Thus, absent any knowledge of Plaintiff's alleged protected activity, it is impossible for Baker to have acted with any retaliatory intent.

Even if Baker did have knowledge of ███████████████████████████████, the uncontroverted evidence demonstrates Baker would have still decided to not re-swear Plaintiff and had every right under applicable law to make that decision. In North Carolina, each Sheriff is by law granted the exclusive right to hire who they please and to even make hiring decisions based on political considerations. The North Carolina Supreme Court has held that, "by standing in the elected sheriff's shoes, a deputy sheriff fills a role in which loyalty to the elected sheriff is necessary to ensure that the sheriff's policies are carried out." Young v. Bailey, 368 N.C. 665, 671-72, 781 S.E.2d 277, 281 (2016). It is for this reason that North Carolina law states that, "[e]ach sheriff…elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103(1). The Fourth Circuit has also held that sheriffs may apply political considerations in exercising this right to hire, discharge, and supervise their employees. Jenkins v. Medford, 119 F.3d 1156, 1164 (4th Cir. 1997) ("[T]he office of deputy sheriff is that of a policymaker, and deputy sheriffs are the alter ego of the sheriff generally, for whose conduct he is liable. We therefore hold that such North Carolina deputy sheriffs may be lawfully terminated for political reasons under the Elrod-Branti exception to prohibited political terminations.")

Once he was elected, Baker was faced with the decision of whether to permit Plaintiff who:

- Was one of his political opponent's Chief Deputies,
- Was known to have been specifically recruited by former Sheriff Harrison out of retirement,
- Was known to be very loyal to Harrison,
- Was known to have vigorously opposed Baker's candidacy for Sheriff,
- Baker perceived did not like him, and

- Baker did not like or trust,

to continue serving Baker after his election.

The uncontroverted evidence shows Baker decided to not re-swear Plaintiff because Plaintiff was not aligned with Baker in any way. Plaintiff's dislike of Baker is evident from the negative portrayal of Baker in the factual allegations of the First Amended Complaint and has been confirmed through discovery in this case. Baker (and others) testified that Plaintiff and Baker were not friends and did not get along. In fact, Green testified that "[e]verybody at the [WCSO] when Gerald Baker was elected knew that [Baker] was not unfortunately, going to keep Chief Johnson…[T]hey were comrades, but they really didn't—they—they just didn't really care for each other, and that's about the best way I can put it without getting ugly…It was two men that just didn't really like each other." [Green 75:23-77:1] In fact, this dislike between Baker and Plaintiff was longstanding, and Green speculated it had something to do with CID. [Green 86:15-25]

As this evidence shows, Baker's distrust and dislike of Plaintiff began before Plaintiff retired in 2000, before Patrick started working with the WCSO, before Plaintiff returned to the WCSO in 2003, ███████████████████████████ before Baker retired in June 2017, ███████████████ before Baker won the Sheriff's election in 2017, and before Patrick became a member of Baker's transition team. There is simply no evidence to support that Baker's decision to not re-swear his political rival's Chief Deputy, a person who had opposed Baker's candidacy, and an individual who expressed dislike and disdain for Baker for years, through and including the pendency of this litigation was in any way related to what Plaintiff now alleges to have been "protected activity".

23

Accordingly, Plaintiff cannot show that "but for" his alleged protected activity, Baker would not have made the decision to not swear him in. Nassar, 133 S. Ct. at 2534. Stated alternatively, Plaintiff cannot show that Baker's "desire to retaliate" was the but-for cause that Plaintiff was not re-sworn as a deputy in the new administration. CavaMezze Grill, LLC, 858 F.3d at 900.

Plaintiff's speculation that Patrick and Baker's friendship was the motivation for Baker's decision not to re-swear Plaintiff is not sufficient to survive summary judgment, especially in light of uncontroverted testimony to the contrary. Plaintiff's speculation requires inference layered upon inference, none of which is supported by competent evidence.

First, Plaintiff points to Patrick being named to Baker's "transition team" in an attempt to show Patrick somehow influenced Baker's decision to not swear Plaintiff as a deputy. [DE # 16, ¶¶ 27-28, 30] ███████████████████████████████████████████ ██████████████████████████████ and that this must be the "real reason" for Baker's decision. These inferences however are not admissible evidence. Rather they are complete speculation wholly unsupported by any admissible evidence.

Indeed, none of the witnesses who have been deposed in this action—including Plaintiff—have testified that Baker even had any knowledge whatsoever of ████████████████████ ████████████████████ much less that the purported "protected activity" of Plaintiff influenced in any way Baker's decision not to re-swear Plaintiff. Baker's decision had been years in the making as Baker observed Plaintiff to have engaged in conduct which Baker deemed incompatible with Baker's vision for his administration. [Baker 63:8-23] As Terry Green so aptly stated, "[e]verybody at the [WCSO] when Gerald Baker was elected knew that [Baker] was not unfortunately, going to keep Chief Johnson…[T]hey were comrades, but they really didn't—

they—they just didn't really care for each other, and that's about the best way I can put it without getting ugly…It was two men that just didn't really like each other." [Green 75:23-77:1]

Similarly, Plaintiff has not proffered any admissible evidence to ████████████ *any* action whatsoever to influence Baker's decision that Plaintiff should be excluded from Baker's administration. None of the witnesses have testified that Baker's decision not to re-swear Plaintiff was influenced by any person other than Baker. Rather, the uncontroverted evidence shows Baker alone decided to not re-swear Plaintiff. [Baker 78:13-79:12] Plaintiff has not forecast any evidence that Baker's decision to not swear-in Plaintiff merely "rubber-stamp[ed] a decision, report, or recommendation actually ████████████" Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 290 (4th Cir. 2004). Plaintiff's reliance on conclusory statements such as, "Baker terminated Plaintiff from his position as Chief of Operations with the WCSO in December 2018, ██████████████████████████," is insufficient to meet the but-for standard for causation and insufficient to meet Plaintiff's burden at the summary judgment stage. As such, Plaintiff's retaliation claim should be dismissed with prejudice.

### C. Baker Had Legitimate, Non-Retaliatory Reasons to Not Re-Swear Plaintiff.

Even if Plaintiff could proffer the necessary evidence to establish a *prima facie* case, which he cannot, his claim must still fail because Baker has articulated a legitimate non-retaliatory reason for his actions which Plaintiff has not and cannot rebut. Retaliation may be shown through direct evidence or by utilizing the McDonnell Douglas burden-shifting framework. Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997). If Plaintiff can establish a *prima facie* case, Baker must then "articulate a legitimate, non-retaliatory justification." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Baker's burden "is one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Baker can meet this burden by

"offering admissible evidence sufficient for the trier of fact to conclude" that the proffered legitimate, non-retaliatory reason was the actual reason for the adverse action. Id. If Baker makes this showing, the burden then shifts back to Plaintiff to show the stated reason was pretextual and that retaliation was the "actual reason" for the materially adverse action. See Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 253-54 (4th Cir. 2015). Stated another way, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." University of Tx. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013) (emphasis added). The ultimate burden of persuasion remains with Plaintiff *at all times*. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

The uncontroverted evidence shows Baker decided to not re-swear Plaintiff because Plaintiff was not aligned with Baker in any way. As explained above, Baker alone made the decision not to re-swear Plaintiff without any input from anyone else. [Baker 78:13-79:12] Baker reached this decision based upon his interactions with Plaintiff over the years in which he observed Plaintiff lacking both character and integrity necessary to work under his Administration. [Baker 63:8-23] It is undisputed that Plaintiff and Baker were not friends and did not get along. Plaintiff's dislike of Baker is evident from the negative portrayal of Baker in the factual allegations of the First Amended Complaint and has been confirmed through the way discovery has been conducted in this case. Again, Plaintiff has not proffered any admissible evidence to dispute these reasons. In fact, the admissible evidence supports Baker's testimony and defeats Plaintiff's claim.

At bottom, Plaintiff disagrees with Baker's decision not to re-swear him as a deputy. However, this disagreement is insufficient to dispute Baker's legitimate, non-retaliatory reasons for his decision. Whether Baker made the "right" decision or whether Plaintiff's conduct warranted Plaintiff to not be re-sworn is not a matter for the Court, which does not "sit 'as a kind

26

of super-personnel department weighing the prudence of employment decisions.'" <u>Villa v. CavaMezze Grill, LLC</u>, 858 F.3d 896, 901 (4th Cir. 2017) (quoting <u>DeJarnette v. Corning Inc.</u>, 133 F.3d 293, 299 (4th Cir. 1998)). "(W)hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not (the Court's) province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." <u>Laing v. Fed. Express Corp.</u>, 703 F.3d 713, 722 (4th Cir. 2013) (first alteration in original) (quoting <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274, 279 (4th Cir. 2000)). This is particularly true in the context of a decision made by a Sheriff as to who will serve under him or her. As noted above, North Carolina law states that, "[e]ach sheriff…elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103(1). The relevant decisions from both the North Carolina Courts and the Fourth Circuit support this discretion.

### D. Plaintiff Cannot Show Pretext.

Finally, Plaintiff's retaliation claim must fail because he cannot show pretext. Plaintiff may prove pretext by showing the alleged nondiscriminatory "explanation [for termination] is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of (retaliation)." <u>Mereish v. Walker</u>, 359 F.3d 330, 336 (4th Cir. 2004)). At the pretext stage, "a plaintiff must establish both that the employer's reason was false and that retaliation was the real reason for the challenged conduct," which is effectively a "but-for" standard. <u>Foster v. Univ. of Maryland-E. Shore</u>, 787 F.3d at 252. In order to rebut these legitimate reasons, Plaintiff must establish first that these legitimate reasons are not truthful, and second, that the real reason for the adverse action was Plaintiff's engagement in the protected activity. See <u>Holland</u>, 487 F.3d at 218 (citing <u>Beall</u>, 130 F.3d at 619). Plaintiff cannot make these showings.

First, Plaintiff has not presented any evidence which casts doubt on the fact that Baker's decision to not re-swear Plaintiff was more than an exercise of Baker's judgment. Plaintiff has not proffered any admissible evidence—other than his own disagreement with the decision—to show that Baker's reasons were not the true reason for the decision to not re-swear Plaintiff. At most, Plaintiff has pointed to the purported "close friendship" of Baker and Patrick as justifying his decision to not re-swear Plaintiff. As explained in detail above, these "facts," even if true are, insufficient to carry Plaintiff's burden. Further, Plaintiff's disagreement with the decision does not change the fact Baker believed Plaintiff's conduct warranted him to not be re-sworn. [Baker 63:8-23] The Fourth Circuit has repeatedly recognized that "'(i)t is the perception of the decision-maker which is relevant, not the self-assessment of the plaintiff.'" <u>Hawkins</u>, 203 F.3d at 280. Here, no reasonable juror could believe Baker was motivated by retaliatory animus in not re-swearing Plaintiff.

Further, Plaintiff's arguments of pretext fail because Plaintiff's comparator and colleague,



███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████ Thus, it is

clear that Plaintiff's allegation that Baker was somehow motivated by his friendship with Patrick

is specious, unfounded speculation, and directly contrary to the undisputed admissible evidence in

this action.

In sum, Plaintiff has not proffered any admissible evidence to prove that Baker's "real

reason" not to re-swear Plaintiff was retaliation. Rather, the overwhelming undisputed evidence

proves Baker had a non-retaliatory motive in not re-swearing Plaintiff, namely Baker's perception

as to Plaintiff's lack of character and integrity, which Baker personally observed during his

employment. [Baker 63:8-23] Accordingly, Baker is entitled to Summary Judgment.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, Defendant respectfully requests that

Summary Judgment be entered in favor of Defendant and that Plaintiff's claims be DISMISSED

WITH PREJUDICE.

Respectfully submitted this the 15th day of June, 2021.

JACKSON LEWIS P.C.

BY: */s/ M. Robin Davis*
M. ROBIN DAVIS
N. C. State Bar No. 21655
JASON V. FEDERMACK
N. C. State Bar No. 46014
*Attorneys for Defendants*
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6460
Facsimile: (919) 760-6461
Email: Robin.Davis@jacksonlewis.com
Email: Jason.Federmack@jacksonlewis.com

29

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:20-cv-00004-D

RICHARD L. JOHNSON,                    )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )        **CERTIFICATE OF**
                                       )        **SERVICE**
GERALD BAKER, SHERIFF OF WAKE          )
COUNTY, in his official capacity,      )
                                       )
            Defendant.                 )


The undersigned certifies that on June 15, 2021, the foregoing *Memorandum of Law in Support of Defendant Gerald Baker, Sheriff of Wake County's Motion for Summary Judgment* was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, which will send notification of such filing as follows:

Richard T. Gammon
Joseph E. Zeszotarski, Jr.
Gammon, Howard & Zeszotarski, PLLC
Post Office Box 1127
Raleigh, NC 27602
rgammon@ghz-law.com
jzeszotarski@ghz-law.com
*Attorney for Plaintiff*

30

JACKSON LEWIS P.C.


BY:    */s/  M. Robin Davis*
        M. ROBIN DAVIS
        N. C. State Bar No. 21655
        JASON V. FEDERMACK
        N. C. State Bar No. 46014
        *Attorneys for Defendants*
        3737 Glenwood Avenue, Suite 450
        Raleigh, NC 27612
        Telephone:  (919) 760-6460
        Facsimile:   (919) 760-6461
        Email: Robin.Davis@jacksonlewis.com
        Email: Jason.Federmack@jacksonlewis.com