UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:20-CV-4-D

RICHARD L. JOHNSON,

                    Plaintiff,

        v.

GERALD BAKER, SHERIFF OF WAKE
COUNTY,

                    Defendant.

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

NOW COMES PLAINTIFF Richard L. Johnson ("Johnson"), through undersigned counsel, and respectfully submits this response in opposition to the Defendant's motion for summary judgment.

## INTRODUCTION

Defendant asserts that this lawsuit is a "thinly veiled politically motivated effort" to "cast negative light" upon Defendant. (DE-54 at 1). Putting aside Defendant's hyperbole, nothing in Johnson's lawsuit (DE-16) refers to politics. This lawsuit is about retaliation -- Defendant's retaliation against Johnson not for politics, but for Johnson's actions in reporting and demoting Defendant's close confidante ███████████████████████████████████████████████ ████████████████ Whatever "negative light" is cast on Defendant is his own doing.

Defendant argues the familiar civil defendant mantra at summary judgment that "Plaintiff has failed to produce a scintilla of evidence to support" his claims. (DE-54 at 2). To the contrary, a fair review of the record evidence presents a textbook

example of retaliatory discharge of an employee in violation of Title VII. Defendant's motion (a) presents only the facts he believes favorable to him, without consideration of the entire record, and (b) fails to acknowledge that, at summary judgment, the facts must be viewed, and all inferences taken, in the light most favorable to Johnson. Material issues of fact exist, and the motion for summary judgment should be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If Defendant meets its burden, then Johnson must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether there is a genuine issue for trial, Johnson's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

2

## I. Johnson's Long and Respected Law Enforcement Career.

Richard Johnson is a highly respected and decorated career law enforcement officer. Johnson began his law enforcement career as a police officer with the Raleigh Police Department in 1967 until 1972. In 1976, Johnson became a deputy sheriff with the Wake County Sheriff's Office ("WCSO"). Johnson served as a deputy sheriff for approximately 25 years under two different sheriffs until he decided to retire in 2000. During his service, Johnson was consistently promoted to supervisory positions, and retired at the rank of Lieutenant, supervising the criminal division of the WCSO. (Johnson Dec. ¶5). Colleagues viewed Johnson as a truthful person. (Green 119).[1]

In April 2003, then-Sheriff Donnie Harrison asked Johnson to return to work for him at the WCSO. Johnson returned to work at the WCSO at the rank of Lieutenant. Johnson was promoted to captain in May 2005, then promoted to Major in April 2006, and then promoted to Chief of Operations in January 2007. (Johnson Dec. ¶6). As Chief of Operations, Johnson was the supervisor of the entire operations branch of the WCSO, reporting directly to the Chief of Staff and second-in-command at the WCSO, Larry Wood, and also to Sheriff Harrison. (Johnson 55).

## II. Defendant's Election to the Office of Sheriff, and Discharge of Johnson.

Defendant Gerald Baker worked as a deputy sheriff with the WCSO from approximately 1990 until he retired in Spring 2017. Other deputies who worked with

---

[1] References to deposition transcripts in the Appendix will list name and page number.

Baker viewed him as "ignorant and arrogant." (Baity 37). Baker and Johnson both worked at the WCSO at the same time for a long period of time; they had a "good" relationship prior to Defendant's election. (Johnson 78).

Some time before 2014, Defendant decided to run for Sheriff of Wake County, and ran against Sheriff Harrison in the November 2018 election. (Baker 24). Defendant won the November 2018 election for the office of Sheriff of Wake County, and took office on 3 December 2018. (Baker 61-62).

Prior to Defendant taking office in December 2018, Defendant instructed a close colleague, Terry Green, to inform Johnson that he would not permit Johnson to be re-sworn as a deputy under his command. Green told Johnson that Defendant "has no use for you and you are gone." (Johnson 154-55). This decision by Defendant had the effect of terminating Johnson, because Johnson could not continue his employment with the WCSO without being sworn in under the new sheriff. (Baker 63). Upon taking office as Sheriff on 3 December 2018, Defendant Johnson was not re-sworn by Defendant, thereby terminating Johnson. *Id.*.

███████████████████████████████████████████████████

███████████████████████████████████████████ At that time, there were more than 400 sworn deputies, the rest of whom were re-sworn. (Johnson at 29). Moreover, Sheriff Harrison had a senior staff comprised of at least eleven (11) deputies and staff. Johnson is the only member of the senior staff

---

[2] The other deputy not resworn, ███████████ also had knowledge of ████████ as described more specifically herein *infra*. (Johnson at 89).

4

terminated by Defendant at the time Defendant took office. ███████████

███████████████████████████████████████████████████████

### III. The Unlawful Reason Behind Johnson's Discharge – Retaliation Against Johnson by Defendant for Johnson's Role in Reporting and Disciplining Defendant's Close Confidant, Patrick, For Patrick's Homophobic and Racist Actions in the Workplace.

Defendant terminated Johnson from his position as Chief of Operations with the WCSO in December 2018, in retaliation for Johnson's role in reporting and demoting Defendant's close confidant ███████████████████████████ ████████████████████████████████████████ and Johnson's role in assisting the WCSO in responding to a ████████████████████ █████████████████████

### A. Patrick's Unlawful Acts at the WCSO Training Sessions.

Teddy Patrick is a deputy sheriff with the WCSO who began work with the WCSO in approximately 2000. In 2017, Patrick held the rank of Lieutenant at the WCSO. In that role, he held training sessions at the WCSO on various subjects for other deputies.





**B.** ██████████████████████ **Voluntarily Report** ████████ **Illegal Conduct to Johnson.**

Two deputies - ███████████████████████ -- who were present at one of the training sessions in May 2017 and heard ████████████████

**C.**     **Johnson Reports Patrick's Conduct to Sheriff Harrison and Advocates that Patrick be Terminated.**

**D.**

███████████████████████████████████ ██████████

███████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████

**IV. Defendant and ██████ Discuss ██████████████, and Defendant Retaliates Against Johnson for his Actions.**

The record evidence abundantly establishes Defendant's knowledge of ████████████, and desire to retaliate against those involved.

**A. Defendant and ██████ Are Close Friends and Confidants Who Engage in Activities Only the Closest of Friends Would Share.**

---

[3] Wrenn retired from WCSO prior to Baker being elected Sheriff. (Johnson 124).

One of the defenses offered by Defendant is that he would have no reason to retaliate for ██████████████ because he and ████████ are not close. The record emphatically establishes otherwise. Defendant and ████████ worked together as deputy sheriffs for many years. (Johnson 95). At one point, ███████ was Defendant's direct supervisor. (Baker 55). Numerous witnesses describe Defendant and ████████ as "close friends." (Shropshire 31; Baity 71-72).

The activities that Defendant and Patrick engage in together show how close a relationship they have. ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████ ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████[4]

██████ at the time he was Defendant's supervisor when Defendant was a

deputy at WCSO, ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

In addition to these facts, Defendant and ██████ also ate lunch together often

and were members of the same Masonic Lodge.  (Baker 23).  Defendant admits that

---

[4] This evidence establishes that Patrick affirmatively lied about material factual
matters during his deposition. ███████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████

███████ is "a friend, yes" (Baker 23) and that he trusts ████████ (Baker 54).  There is no question that Defendant and ███████ are very close friends and confidants.

**B.    Defendant and ██████ Discussed ███████████████ and Both Thought it was "Unfair."**

There  also  is  no  question  that  Defendant  and  ███████  discussed  ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████  ███████████████  ██████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

**C.    ███████ Knew of Johnson's Role in His ████████**

Likewise, there is no question that ███████ knew of Johnson's involvement in his ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

12

████████████████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

There is likewise abundant evidence of ██████ intent to retaliate. ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

### D.     There Is Direct Evidence of Retaliation.

Additional evidence exists that proves the retaliation by Defendant against Johnson.  First, of the more than 400 sworn deputies in place at the time Defendant took office in December 2018, only two were not re-sworn by Defendant, resulting in their termination -- and Johnson was one of them.  Johnson was the only member of

Sheriff Harrison's senior staff not re-sworn -- ███████████████████████

███████████████████████████████████

Equally telling, the two deputies who reported Patrick's conduct to Johnson --

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████   ██████████████████████

In addition, a close personal friend of Karen Wallace (Defendant's executive

aid and a member of Defendant's transition team in November 2018 just before he

took office) named Alfreda Williamson told ████████ after the 2018 election, that

"Richard Johnson had to go."   (Speight at 88-91).   ████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████

**ARGUMENT**

Title VII of the Civil Rights Act provides that it is illegal for an employer to

retaliate against an employee because of the employee's opposition to "any practice

---

[5] ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

made an unlawful practice" by Title VII, or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff establishes a retaliation claim under Title VII by proving: (1) he engaged in protected conduct; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). A plaintiff can establish a Title VII retaliation claim with direct evidence of retaliation, or under the burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (4th Cir. 1973). *See Lettieri v. Equant Inc.*, 478 F.3d 640, 649-50 (4th Cir. 2007).

## I.     There is No Failure to Exhaust Administrative Remedies.

Defendant argues, for the first time in this litigation,[6] that Johnson has not exhausted his administrative remedies "as to several of [his] theories." (DE-54 at 12). This position is contrary to Fourth Circuit law and should be rejected.

It is certainly true that before bringing suit, a Title VII plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Chacko v. Putuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005). But only where the EEOC charge references "different time frames, actors, and discriminatory conduct than the

---

[6] Notably, Defendant did not raise this issue at the motion to dismiss stage, though it is based on the actions alleged by Johnson in his First Amended Complaint rather than some issue uncovered in discovery. (DE-54 at 12 (citing DE-16)).

central factual allegations in his formal suit" such that they describe "two different cases" can a failure to exhaust administrative remedies be found. *Id.* at 511-12.

Moreover, this exhaustion requirement is not intended "to be a tripwire for hapless plaintiffs." *Sydnor v. County of Fairfax*, 681 F.3d 591, 594 (4th Cir. 2012). "Title VII ... sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (citations omitted). Accordingly, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 406.

Defendant's position fails under this standard. Johnson's lawsuit specifically identifies a number of different ways that he engaged in protected activity: (1) reporting ▉▉▉▉▉▉▉ to Sheriff Harrison; (2) expressing his personal belief to Sheriff Harrison that ▉▉▉▉▉▉ was illegal; (3) participating in ▉▉▉▉ ▉▉▉▉ and (4) assisting the WCSO in responding to ▉▉▉▉▉▉ ▉▉▉▉ (DE-16, ¶ 40). But, contrary to Defendant's representations, all of this conduct is fairly included in Johnson's EEOC charge, when the <u>entirety</u> of Johnson's EEOC charge is examined. Defendant quotes only one portion of the EEOC charge in his brief, which charge actually states in full:



I. On August 01, 2017, I was required by my employer ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ Consequently, on December 02, 2018, I was terminated from a Chief Deputy Sheriff position. I had been employed by the above-named employer since 1976.

16

II.    On November 21, 2018, I was told by a transition team member, Mr. Terry Green, that I would not be sworn-in by the new sheriff and my employment was terminated, effective December 02, 3018 (sic).  However, no reason was given for my termination.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

III.    I believe that I was discriminated against in retaliation for my involvement in the demotion of a subordinate Deputy Sheriff in August 2017; in violation of title VII of the Civil Rights act of 1964, as Amended.

(DE-53-7 at 2).  By alleging that he was "discriminated against in retaliation for my involvement in the demotion of a subordinate Deputy Sheriff in August 2017," and by specifically referencing ████████████████████████████████████

████████████████████████████████████████████████

The case relied on by Defendant -- *Chacko* -- actually undercuts Defendant's position.  In *Chacko*, the Fourth Circuit found that a plaintiff had failed to exhaust his administrative remedies where his EEOC charge alleged three acts of supervisor harassment, but in litigation based his claims on coworker harassment based on the use of racial epithets.  *Chacko*, 429 F.3d at 509.  The Fourth Circuit found that the plaintiff had failed to exhaust his administrative remedies because "a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not have been expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling."  *Id.* at 512.

Here, on the other hand, Johnson's EEOC complaint states he was retaliated against for "my involvement in the demotion of a subordinate Deputy Sheriff" and (a) references ██████████████████████████ and (b) ████████████████████████

17

██████████████████████████████████████████████████

████████████████████████ By doing so, Johnson references the time frame and specific actors involved in the retaliation, and gives notice to Defendant of his claim. Any "reasonable investigation" of these facts would uncover all of the facts alleged in Johnson's lawsuit. This is all that Fourth Circuit law requires. *See, e.g.* *Sydnor*, 681 F.3d at 594-97 (finding administrative exhaustion requirement met).

Defendant's position would require a pro se EEOC claimant to essentially include his entire complaint in his EEOC charge. The law does not require "untrained parties to provide an essay to the EEOC to exhaust their administrative remedies." *Sydnor*, 681 F.3d at 594. Johnson has exhausted his administrative remedies as to all grounds for his retaliation claim.

## II. The Record Establishes That Johnson Has Engaged in Protected Activity Under Title VII, In a Number of Ways.

Defendant next argues that Johnson has failed to "proffer admissible evidence" that he engaged in protected activity under Title VII. (DE-54 at 15). Neither the facts nor law support Defendant's position.

The record evidence establishes that Johnson (1) was informed by ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ (2) confirmed █████████████ with Sgt. Shropshire, and then reported ██████████████ which Johnson reasonably believed to be in violation of Title VII, directly to Sheriff Harrison, who decided to institute an internal investigation; (3) met with ████████████████████████████████ at which time



(4) at the conclusion of the investigation, was consulted by Sheriff Harrison and advocated his personal belief to Sheriff Harrison that ███████████████████████ ██████████ (5) then conveyed Sheriff Harrison's decision ████████████████ ████████ and (6) provided information about ████████████████████ to the WCSO legal counsel ████████████████████████████████

All of these acts by Johnson constitute protected conduct under Title VII.

### A. Johnson's Reporting of Patrick's Illegal Conduct to Sheriff Harrison and His Personal Advocacy to Sheriff Harrison of the Illegality of Patrick's Conduct Is Protected Activity.

Title VII's "opposition clause" prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. §2000e-3(a).  The  Fourth Circuit takes an expansive view of what constitutes oppositional conduct, and "the threshold for oppositional conduct is not onerous." *Demasters v. Carillion Clinic*, 796 F.3d 409, 416-17 (4th Cir. 2015).

It is beyond dispute that reporting suspected violations of Title VII by a coworker to one's employer is oppositional conduct that is protected activity under Title VII.  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015); *Ward v. AutoZoners, LLC*, 2017 U.S.Dist.Lexis 142652, *12 (E.D.N.C. 2017) ("there is no dispute that plaintiff engaged in protected activity when he reported Atkinsons' sexual harassment" to his superiors), *aff'd in part, rev'd in part on other grounds*, 958 F.3d 254 (4th Cir. 2020).  In the context of a retaliation claim, an employee is protected when he opposes "not only employment actions actually unlawful under Title VII but

also employment actions he reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (citations and quotations omitted).

Here, Johnson did just that -- he reported ███████████████ to his superior (Sheriff Harrison) when he learned of it. There is no question that ████████ ████████████████████████████████████████████████████ ████████████████ could be and was viewed by Johnson, and by the deputies present, as inappropriate and unlawful. An employee's communication to his superiors that discriminatory acts have taken place in the workplace "virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro Gov't of Nashville*, 555 U.S. 271, 276 (2009); *Demasters*, 796 F.3d at 416-17 (noting that the threshold for oppositional conduct under Title VII "is not onerous"). Thus, Johnson's report to Sheriff Harrison of ████████ acts alone is protected activity under Title VII.

Defendant seeks to avoid this plain result by arguing, as he did at the motion to dismiss stage, that Johnson feeling "duty bound" to report the matter to Sheriff Harrison means Johnson did not engage in protected activity because "[c]omplying with is legal obligations and job duties does not constitute protected activity." (DE-54 at 15). Defendant relies on an unpublished case from a different district court, *Constellium Rolled Prods. Ravenswood, LLC v. Rogers*, 2017 U.S.Dist.Lexis 64779 (S.D.W.Va. 2017). (DE-19 at 12, 14-15) for this notion. As it was at the motion to dismiss stage, this position should be rejected.

First, and most basic, there is no record evidence that part of Johnson's "job duties" would be to report or investigate acts of discrimination in violation of Title

VII in the WCSO. Johnson was not a human resources official who was tasked with handling reports of discrimination -- he was Chief of Operations at WCSO. There is no record evidence that Johnson's role as Chief of Operations included any human resources function whatsoever -- and common sense would dictate that human resources officials handle report of Title VII complaints. Indeed, the plaintiff in *Constellium* was a "Vice President for Human Resources" for the defendant in that case. *Constellium*, 2017 U.S.Dist.Lexis 64779 at *2. Thus, the basic premise behind Defendant's position lacks any factual basis -- the fact that Johnson felt he had a "duty" to report this conduct to Harrison simply shows Johnson has a moral compass.

Second, Defendant's legal premise that making a report as part of one's "job duties" cannot constitute oppositional conduct has been directly rejected by the Fourth Circuit. The "manager rule" sought by Defendant here was rejected by the Fourth Circuit in *Demasters*, where the court held that even where a plaintiff's job role specifically entails reporting or investigating complaints of workplace discrimination, that fact does not prevent a plaintiff from engaging in conduct protected by Title VII when he reports that conduct to his superiors. *Demasters*, 796 F.3d at 421-24. Rather, a plaintiff engages in protected activity when he reports workplace discrimination to his superiors, regardless of his job duties, when the plaintiff's "course of conduct as a whole" conveys to his employer (a) his belief that workplace discrimination has occurred, and (b) the discrimination is actually unlawful under Title VII or reasonably believed by the plaintiff to be unlawful.

*Demasters*, 796 at 418  (holding report of plaintiff, an "employee assistance program consultant," of workplace discrimination to his superiors is protected activity).

The record evidence establishes just that here.  When ████████████ told  Johnson  about ████████████████████ ████████ Johnson first ████████████████████ ████████████████████████████ But Johnson did not drop the matter -- he "still had a problem" with ████████████ and therefore reported the matter to Sheriff Harrison.  (Johnson 104).  ████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████ This is  a  clear  example  of  oppositional  conduct protected by Title VII.  *Boyer-Liberto*, 786 F.3d at 282.

Third, even if *arguendo* Johnson's report to Sheriff Harrison fell within his "job duties," *Constellium* actually supports Johnson's position.  *Constellium* holds that where, as here, a plaintiff "actively supports other employees in asserting their Title VII rights," the plaintiff is engaging in protected activity:

> To the extent an employee is required as part of her job duties to report or  investigate  other  employees'  complaints  of  discrimination,  such reporting or investigating by itself is not a protected activity. ... because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII.  But if an employee -- even one whose  job  responsibilities  involve  investigating  complaints  of discrimination -- actively "supports" other employees in asserting their Title  VII  rights  or  personally  "complains"  or  is  "critical"  about  the "discriminatory employment practices" of her employer, that employee has engaged in protected activity.

*Constellium*, 2017 U.S.Dist.Lexis 64779, *19 (S.D.W.Va. 2017) (*quoting Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015)).   The record evidence here establishes that Johnson was informed of ██████████████████ ████████████████████████ two deputies concerned about the impropriety of the conduct by a supervisor like ████████ Johnson reported the conduct to Sheriff Harrison ████████████████████████████ and later personally advocated to Sheriff Harrison his belief that ████████ conduct was illegal and that ████████████████████████ Johnson's acts in this regard, in support of ████████████████ report, plainly constitute protected activity under Title VII. *Boyer-Liberto*, 786 F.3d at 282.[7]

## B.   Johnson's Involvement in Patrick's Demotion Constitutes Protected Activity.

Defendant argues that Johnson's involvement in Patrick's demotion does not constitute protected conduct, because "a decision to discipline an employee is not a protected activity under Title VII." (DE-54 at 18).  Again, this position is recycled by Defendant from his denied motion to dismiss.

Defendant cites an unpublished case from another district involving a *pro se* plaintiff, *Pletz v. Hayden*, 2009 U.S.Dist.Lexis 8261 (E.D.Va. 2009), *aff'd sub nom Pletz v. Panetta*, 2010 U.S.App.Lexis 8993 (4th Cir. 2010), for this notion.  The district court in *Pletz*, however, appears to have examined only the issue of whether the

---

[7] Defendant has already conceded as much in his prior filings in this case, citing *Constellium*. *See* DE-15 at 9 (conceding that Johnson's reporting of ████████ conduct constitutes protected activity "if he personally advocated his belief that discrimination occurred.")

23

plaintiff's corrective action against a subordinate constituted participation activity, not oppositional activity, under Title VII. *See Pletz*, 2009 U.S.Dist.Lexis 8261, *12-13 ("[F]atal to plaintiff's claim, is that taking corrective action is not a protected activity under Title VII's anti-retaliation provisions. 42 U.S.C. § 2000e-3(a) (listing protected activities as 'making charges, testifying, assisting, or participating in enforcement proceedings' of Title VII claims.) Therefore, this portion of Plaintiff's complaint fails as a matter of law.")

As outline above, Johnson's actions here -- including his advocating to Sheriff Harrison that ███████████████████████████████████████████ -- constitutes oppositional activity to ██████████████████████ and no case cited by Defendant holds otherwise. As noted above, the Fourth Circuit takes a broad view of oppositional conduct, and the threshold for oppositional conduct "is not onerous." *Demasters*, 796 F.3d at 417.[8]

### C. Johnson's Involvement in Assisting the WCSO Legal Staff With Responding to Patrick's Bogus EEOC Charge Constitutes Protected Activity.

---

[8] At numerous points, Defendant argues (without citation to authority) that Johnson has not engaged in oppositional conduct because he was not "opposing an employer's alleged discriminatory action." (DE-54 at 16, 19). This position overlooks the fact that ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ As such, the WCSO could be liable for these comments as a discriminatory action by the WCSO -- this is exactly what Johnson was advised by the WCSO legal staff. (Johnson Dec. ¶3). Thus, ██████████████ <u>could</u> constitute discriminatory action by Johnson's "employer", the WCSO. The fact that, at that point, that regime of the WCSO chose the correct and lawful course and ██████████████████████████ does not change the fact that ██████████████ is workplace conduct in violation of Title VII. Johnson's reporting of that conduct therefore constitutes protected activity under Title VII. *Boyer-Liberto*, 786 F.3d at 282 (4th Cir. 2015).

24

Johnson also engaged in a separate and distinct act of protected activity -- his involvement in WCSO's response to ███████████████████████████ Title VII forbids retaliation against an employee who "has made a charge, testified, <u>assisted, or participated in any manner</u>" in a protected proceeding. 42 U.S.C. § 2000e-3(a) (emphasis added); *Glover v. S.C. Law Enforcement Division*, 170 F.3d 411, 415 (4th Cir. 1999). The phrase "in any manner" is "a clear signal that the provision is meant to sweep broadly." *Glover*, 170 F.3d at 415.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ This activity plainly meets the criteria under 42 U.S.C. § 2000e-3(a) of "assist[ing], or participat[ing] in any way" in an EEOC proceeding, and therefore is protected activity. Defendant's motion on this ground should be denied.

## III. A Material Issue of Fact Exists as to "But-For" Causation Between Johnson's Protected Activity and Defendant's Termination of Johnson.

Defendant first argues that "but-for" causation cannot be established because he claims there is no evidence that Defendant knew of Johnson's protected activity relating to █████ at the time Defendant terminated Johnson. (DE-54 at 21). The record establishes otherwise, and a material issue of fact exists.

There is no question that ██████ himself knew of Johnson's role in his ██████████████████████████████████████████ Johnson met with

25

██████ and informed him of the internal investigation. Johnson discussed ██████

██████ with him -- ██████ told Johnson "I said it. I meant it." ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

There also is no question that ██████ and Defendant are close confidants, who engage in activities shared by only the closest of friends. (*See* supra at 10-11). ██████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

Finally, there is no question that ██████ and Defendant discussed ██████

██████ -- both admit doing so. And if ██████ knew the <u>three</u> deputies who "complained" (i.e., ████████████, and Johnson), it is not much of a leap to conclude that these two close friends discussed that fact too. ██████

██████████████████████████████████████████████████

████████████████████████████████████

In light of these facts, and viewed in the light most favorable to Johnson, the record evidence creates a material issue of fact as to Defendant's knowledge of Johnson's protected activity. Defendant takes the position that summary judgment

26

is appropriate because ███████████████████████████████████ ████████████████████████████████████ But the law at summary judgment permits the Court to consider inferences -- and every fair inference here is that these two very close friends discussed ████████████████ which he was angry about and about which he expressed a desire to retaliate, and Baker acted at his first opportunity upon his election to retaliate against all three of those involved in causing the demotion. *See Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489-90 (4th Cir. 2005) (where "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created").

Defendant next argues that Johnson cannot establish "but-for" causation because Defendant claims to have other political and personal reasons to terminate Johnson. (DE-54 at 22). But Defendant's position fails to acknowledge the law as to "but-for" causation. The Fourth Circuit, relying on United States Supreme Court precedent, instructs "that a cause need not work in isolation to be a but-for cause." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (*citing Burrage v. United States*, 134 S.Ct. 881, 888 (2014) ("Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.")).[9] Accordingly, to overcome a summary judgment

---

[9] Contrary to Defendant's assertion, (DE-21 at 3), nothing in *Comcast Corp. v. Nat'l Assn. of African Am.-Owned Media*, 140 S.Ct. 1009 (2020) overrules or changes the holding of *Guessous,* or *Burrage* on which it is based. *Comcast* simply notes the long-standing law regarding "but-for" causation and addresses the issue of when in a case that standard applies to a claim under Section 1981. *See* 140 S.Ct. at 1014-19.

motion, a plaintiff's "burden is to show that the protected activity was a but-for cause of [his] termination, not that it was the sole cause." *Guessous*, 828 F.3d at 218.

Thus, even if Defendant had some political or personal difference with Johnson, this does not require the Court to disregard entirely the other record evidence establishing retaliatory intent. The fact that Defendant <u>could</u> have discharged Johnson for political or personal reasons does not mean that he <u>would</u> have done so absent Johnson's protected activity. *Guessous*, 828 F.3d at 218. █████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

Defendant asks this Court to simply accept Defendant's testimony as to motive, and overlook the other record evidence showing retaliation. Defendant cites the deposition testimony of ██████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ "Summary judgment is not appropriate when questions about the credibility of key witnesses loom large and the evidence could permit the trier-of-fact to treat their testimony with skeptical scrutiny." *Jacobs v. NCAOC*, 780 F.3d 562, 576 (4th Cir. 2015) (reversing grant of summary judgment against retaliation claim). All of these facts, combined with the other copious evidence of retaliatory intent and the proof of ██████████████

████████ (*see* supra at 10-14), create a material issue of fact as to retaliatory intent

28

and "but-for" causation precluding summary judgment. *See, e.g. Lettieri*, 478 F.3d at 649-51 (reversing grant of summary judgment as to Title VII retaliation claim).

## IV. Material Issues of Fact Exist as to Pretext.

Finally, Defendant argues that he has a non-discriminatory reason for firing Johnson (their purported political and personal differences), and that Johnson "cannot show pretext." (DE-54 at 27).

Defendant's argument here fails for the same reasons set out above as to but-for causation -- a material issue of fact exists as to Defendant's motivation for terminating Johnson. *See, e.g. Young v. EMCOR Gov't Services*, 2015 U.S.Dist.Lexis 122895 *11-12 (E.D.Va. 2015) (noting that same evidence can be used to establish prima facie retaliation case and pretext). As outlined above, the record evidence, viewed in a light most favorable to Johnson, establishes (a) that ██████ knew of Johnson's role in his ██████████████████████████████████████ ██████████████████ (b) ██████████ exhibited an intent to retaliate, as shown by his ████████████████████████████████████████████████████ ████████████████████ (c) ██████████ and Defendant admittedly discussed ████████ ██████████ and (d) the only senior staff member not re-sworn when Defendant took office is Johnson, and the ████████████████████████████████████████████ ██████████████████████ all of which is done at Defendant's first opportunity to retaliate. This chain of events is strong evidence of pretext and retaliatory motive.[10]

---

[10] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

And to overcome summary judgment, Johnson need only show that his protected activity is a but-for cause of his termination -- he need not show it is the sole cause. *Guessous*, 828 F.3d at 218. This evidence creates a material issue of fact as to pretext.

Clever people retaliate in clever ways. *Woods v. City of Greensboro*, 855 F.3d 639, 651-52 (4th Cir. 2017) ("[I]t is much more likely that, where discrimination occurs, it does so in the context of more nuanced decisions that can be explained based upon reasons other than illicit bias, which, though perhaps implicit, is no less intentional"). So it is here. Defendant points to his purported nonretaliatory reasons for discharging Johnson. But at summary judgment, Johnson is entitled to all inferences to be drawn in his favor. And the record evidence here establishes a strong case of retaliatory discharge. Material issues of fact exist, and the motion for summary judgment should be denied.

## CONCLUSION

For the reasons set out herein, Plaintiff Richard L. Johnson respectfully requests that the motion for summary judgment be denied.

---

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████

This the 27th day of July, 2021.

GAMMON, HOWARD &
ZESZOTARSKI, PLLC

/s/   Richard T. Gammon
Richard T. Gammon
State Bar No. 9807
rgammon@ghz-law.com

/s/   Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
State Bar No. 21310

P.O. Box 1127
Raleigh, NC  27602
(919) 521-5878
jzeszotarski@ghz-law.com

Counsel for Plaintiff